UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TERRELL BROWN | CIVIL ACTION |
| VERSUS | NO. 06-9125 |
| CITY OF NEW ORLEANS, CRIMINAL SHERIFF'S OFFICE OF NEW ORLEANS, LA. DEPT. OF CORRECTIONS | SECTION "N"(4) |

## REPORT AND RECOMMENDATION

Before the Court is a "City Motion for Dismissal Under Rule 12(b)(6)" (Rec. Doc. No. 7) filed by the defendants, the City of New Orleans and Mayor C. Ray Nagin, seeking dismissal of the plaintiff's claims for being untimely filed. The motion, along with the entire case, was referred to a United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and (2).**

On March 8, 2007, the undersigned Magistrate Judge conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff, Terrell Brown, and counsel for the defendants, Victor L. Papai, Jr., Timothy R. Richardson, Phyllis Glazer, and Michael Keller, participating by

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. *Spears*, 766 F.2d at 180. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barrientos*, 926 F.2d 480, 481 (5th Cir. 1991).

telephone.[2] Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

## I.  Factual Summary

### A.  The Complaint

The plaintiff, Terrell Brown ("Brown"), is presently incarcerated in the Morehouse Parish Jail in Bastrop, Louisiana. He filed this *pro se* and *in forma pauperis* complaint against the City of New Orleans, the Orleans Parish Criminal Sheriff's Office, the Louisiana Department of Corrections ("DOC"), New Orleans Mayor C. Ray Nagin, Orleans Parish Criminal Sheriff Marlin Gusman, and DOC Secretary Richard Stalder, seeking monetary damages for the alleged untimely evacuation and unsafe conditions of his confinement at the time of Hurricane Katrina.

Brown alleges that he was left for dead, without food or water, for three days after Hurricane Katrina struck the New Orleans area. He also alleges that, at that time, he was moved to a football field at the Elayn Hunt Correctional Center ("Hunt"). He claims that he remained there for about three nights, sleeping in the rain, grass, mud, and water, without shelter. He also complains that news helicopters flew overhead for several days. Brown also alleges that the DOC officers sat in chairs outside of the gates and watched inmates fight over bag lunches thrown to them over the fences. He further claims that, one week later, he was treated for a bad skin infection.

As a result of these conditions, he seeks $50,000 in compensatory damages and punitive damages allowed by law.

---

[2]Rec. Doc. No. 11. The plaintiff was sworn prior to testifying. The cassette tape of the hearing is being forwarded to the custody of the Court Recording Unit along with a copy of this Report and Recommendation.

### B. The *Spears* Hearing

Brown testified that he was a DOC inmate housed in a trustee dorm on the second floor of the House of Detention ("HOD") within the Orleans Parish Prison system at the time of and for six months prior to Hurricane Katrina. Brown alleges that he slept in the jail for three nights after the storm. He had no clean water and no food. He also claims that the water rose outside to just the steps, which was below the second floor, and there was no water on his tier.

On the Thursday after the storm, he was taken to a roof area on the second or third floor. He walked through ankle-deep water to boats. He stated that he was taken by boat to the Broad Street bridge area. He further stated that he then walked through a small amount of water to a dry area under the bridge near Interstate 10. He waited there for two or three hours with no food or water.

Brown further testified that he was put on a bus and taken to the football field at Hunt. He was given a blanket and slept there for three nights. He recalled that, at one point, the guards raised themselves up on a forklift and threw sandwiches to the inmates over the fence. He stated that he received three sandwiches during the time he remained on the field.

Brown stated that, one day, the guards ran water hoses to the field. The inmates were given soap and told to take there clothes off for a shower. He was then moved into Fox 7 Dormitory.

He claims that several days later, he was taken by bus to the airport and flown to the Coleman, Florida Federal Penitentiary II. Brown states that the facility was new and not yet opened. After he was there several days, he noticed a rash on his legs. He was treated for a skin infection and staph infection. He also claims he had skin burns across his forehead and on his lips. He underwent minor surgery on his leg and was given antibiotics and other medication for weeks.

Brown also claims that he is not sure what caused the rash but he attributes it to sleeping on the football field at Hunt, with ants and grassy water.

Brown testified that he sued Mayor Nagin because he heard that the Mayor appeared on CNN and took full responsibility for not evacuating everyone. He also named Sheriff Gusman as a defendant because he was left unattended at HOD with no water or food. He also claimed that he named Stalder and the other defendants because they were responsible for him. He seeks money damages as a result of his experience.

### C. Pending Motion

The City of New Orleans and Mayor Nagin filed a motion seeking dismissal of Brown's claims under Fed. R. Civ. P. 12(b)(6) because the claims have prescribed.[3] The movants argue that Brown filed his petition more than one year after Hurricane Katrina hit New Orleans.

Brown opposes the motion claiming that any delay should be excused because of his moves from prison to prison and his lack of access to a law library for a year.[4] He also argues that his claims should not be dismissed because the defendants at all times acted under color of state law.

## II. Standards of Review of a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

In considering a motion to dismiss under Rule 12(b)(6), the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in the plaintiff's favor. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). A complaint shall only be dismissed if it is beyond doubt that the plaintiff can prove no facts in support of his claim that would entitle him to relief. *Home Builders Ass'n of Ms., Inc. v. City of Madison, Ms.*, 143 F.3d 1006, 1010 (5th Cir.

---

[3]Rec. Doc. No. 7.

[4]Rec. Doc. No. 16.

1998); *Benton v. United States*, 960 F.2d 19, 21 (5th Cir.1992). While conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the granting of a Rule 12(b) motion to dismiss, such motions are viewed with disfavor and are rarely granted. *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997).

In resolving a motion under Rule 12(b)(6), the court is generally limited to considering only those allegations appearing on the face of the complaint. *Benton*, 960 F.2d at 21. However, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3rd Cir. 1990).

Further, the Fifth Circuit has held that when reviewing pro se complaints, the court must employ less stringent standards, look beyond the inmate's formal complaint and consider material subsequently filed as amendments to that complaint. *Howard v. King*, 707 F.2d 215 (5th Cir. 1983); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In *Taylor v. Gibson*, the Court explained:

> It is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly pro se complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided the prisoner to develop his case at least to the point where any merit it contains is brought to light.

*Taylor v. Gibson*, 529 F.2d 709, 713-14 (5th Cir.1976); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Where it appears, however, from the face of the complaint that the applicable limitations period has run, an action is subject to dismissal for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6). *See Songbyrd, Inc. v. Bearsville Records, Inc.*, 104 F.3d 773, 776 n.3 (5th Cir. 1997).

### III. Analysis

Brown's claims arise out of the delayed evacuation of prisoners from OPP, the conditions he endured awaiting and during the evacuation, and the conditions of his confinement at Hunt. Mayor Nagin and the City of New Orleans argue that the claims are prescribed.

#### A. The Applicable Limitations Period

Because there is no federal statute of limitations for § 1983 claims, the district court looks to the forum state's statute of limitations for personal injury claims. *Board of Regents of University of New York v. Tomanio*, 446 U.S. 478, 483 (1980) (citing 42 U.S.C. § 1988); *Wilson v. Garcia*, 471 U.S. 261, 275 (1985) (§ 1983 actions are best characterized as personal injury actions); *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998) (citing *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994)). In Louisiana, personal injury claims are governed by La. Civ. Code Art. 3492, which provides for a prescriptive period of one year from the date of injury or damage.[5] *See Jacobsen*, 133 F.3d at 319 (citing *Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989)).

For purposes of calculating the limitations period, a § 1983 cause of action accrues when the plaintiff knows or has reason to know of the injury which forms the basis of his action. *Id.*, at 319; *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998). In this case, Brown's cause of action would have accrued at the earliest on August 29, 2005, when he was left in OPP to endure Hurricane Katrina and its aftermath.[6] Applying the prescriptive period, he had one year from that date, or until August 29, 2006, to timely file his § 1983 petition.

---

[5] Article 3492 provides that: "[d]elictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage."

[6] Brown's distinguishable claims arising at Hunt did not accrue until they occurred several days later.

6

**B.     Suspension of Deadlines**

While the defendants correctly identified the foregoing as the proper state law governing the prescriptive period applicable to Brown's action, they fail to recognize the state's statutes on the tolling or interruption of prescription. *See Holden v. Knight*, 2003 WL 22902625 (E.D. La. Dec. 8, 2003). The United States Supreme Court requires that the federal courts look to the state's statutes on suspension or tolling of prescription applicable to a § 1983 claim. *Board of Regents*, 446 U.S. at 485. "In borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 463-64 (1975). The Supreme Court has resolved that "[a]ny period of limitation . . . is understood fully only in the context of the various circumstances that suspend it from running against a particular cause of action." *Board of Regents*, 446 U.S. at 485 (quoting *Johnson*, 421 U.S. at 463-64). This Court must therefore consider any state law which would suspend the running of prescription against Brown's § 1983 claims.

Under both Louisiana law and federal law, a suspension of prescription constitutes a temporary halt to its running after which it will continue to run. *Mankowski v. United States*, 148 F.2d 143, 145 (5th Cir. 1945) ("Suspend means to interrupt, ... to discontinue temporarily but with expectation or purpose of resumption."); *Failla v. Dynasty Distributors, Inc.*, 2006 WL 860969 at *4 n.5 (E.D. La. Mar. 24, 2006); *LeBreton v. Rabito*, 714 So.2d 1226 (La. 1998). After Hurricanes Katrina and Rita impacted the State of Louisiana, Governor Kathleen Babineaux Blanco issued three

Executive Orders suspending the limitations period applicable in this case.[7] These orders were later ratified by the Louisiana Legislature.[8] The effect of these Executive Orders, read together, was to suspend prescriptive periods between August 29, 2005 and November 25, 2005. *See Mitchell v. Kaiser Aluminum & Chemical Corp.*, 942 So.2d 1093 (La. App. 5th Cir. 2006).

Following this, on November 23, 2005, the Louisiana Legislature enacted La. Rev. Stat. Ann. § 9:5824, which also memorialized the effects on the legal community arising from Hurricanes Katrina and Rita. The statute provides for a suspension of legal delays, including liberative prescription, from November 23, 2005, through June 1, 2006, and provided that it may be used as a defense to an exception of prescription.[9] *See Cipriano v. Pulitzer*, __ So.2d __, 2007 WL 1575066

---

[7]The three Executive Orders were Nos. KBB-2005-32, KBB 2005-48, and KBB 2005-67. *(See* Executive Orders attached hereto or http://www.gov.state.la.us). In No. KBB-2005-32, the Governor, in recognizing the state of emergency caused by Hurricanes Katrina and Rita, declared the following: "All deadlines in legal proceedings, including liberative prescriptive and peremptive periods in all courts, administrative agencies, and boards are hereby suspended until at least September 25, 2005, including, but not limited to, any such deadlines set for in the following: A. Louisiana Civil Code; B. Louisiana Code of Civil Procedure; C. La. R.S. Title 9, Civil Code Ancillaries; D. La. R.S. Title 13, Courts and Judicial Procedure; E. La. R.S. Title 23, Chapter 10, Worker's Compensation; F. La. R.S. Title 40, Chapter 5 Part XXI-A, Malpractice Liability for State Services; and G. La. R.S. Title 40, Chapter 5, Part XXIII, Medical Malpractice . . . SECTION 2: This Order is effective upon signature and shall apply retroactively from Monday, August 29, 2005, through Sunday, September 25, 2005, unless amended, modified, terminated, or rescinded by the governor, or terminated by operation of law prior to such time." Thereafter, in Executive Order No. KBB 2005-48, the Governor amended the previous order to suspend these deadlines until "at least October 25, 200." Finally, in Executive Order No. KBB 2005-67, the Governor extended the suspension of deadlines "until November 25, 2005."

[8]La. Rev. Stat. Ann. § 9:5821 provides in pertinent part that "[t]he action of the governor of this state in issuing Executive Orders KBB 2005-32, 48, and 67 is hereby approved, ratified, and confirmed subject to the provisions of R.S. 9:5822 through 5825."

[9]La. Rev. Stat. Ann. § 9:5824 provides in pertinent part as follows:
B. (1) Notwithstanding the provisions of R.S. 9:5822 or 5823, a party who is domiciled within the parishes of Cameron, Orleans, Plaquemines, St. Bernard, Jefferson, or Vermilion, or whose cause of action arose within such parishes or whose attorney is domiciled within or has a law office within such parishes, may seek in any court of competent jurisdiction in this state a limited suspension and/or extension of prescription or peremption periods or other legal deadlines, beyond the termination dates provided in R.S. 9:5822 and 5823, by contradictory motion or declaratory judgment. The party seeking an additional suspension and/or extension, in accordance with the provisions of this Section, shall bear the burden of proving by a preponderance of the evidence that the motion was filed at the earliest time practicable and but for the catastrophic effects of Hurricane Katrina or Rita, the legal deadline would have been timely met. If the court grants the motion, the prescription or peremptive period or other legal deadline shall be suspended or extended for a period not to exceed thirty days from the date of the granting of the motion. This limited suspension or extension shall terminate on June 1, 2006, and any right, claim, or action which would have expired during the time period of January 4, 2006, through May 31, 2006, shall lapse on June 1, 2006.

8

(La. App. 4th Cir. May 23, 2007). The legislature further provided that the extension was granted and allowed subject to review of the presiding judge based on the circumstances of the case.

As discussed above, this Court is compelled by Supreme Court precedent to consider and apply these suspensions of the prescriptive period applicable to Brown's § 1983 complaint. Therefore, applying the suspensions of deadlines recognized by the State of Louisiana by executive order and statute, Brown's prescriptive period, or the one-year period by which his § 1983 suit was to be filed, was suspended under Louisiana law from August 29, 2005, through June 1, 2006.[10]

In addition, another recognized suspension of the filing deadlines was in place in this Court. On September 1, 2005, Chief Judge Helen G. Berrigan of the United States District Court for the Eastern District of Louisiana, signed an order suspending ". . . all deadlines and delays, including liberative prescription and peremptive periods in cases pending or to be filed in this Court . . ."[11] This suspension was terminated on November 25, 2005, except for good cause shown.[12] Thus, under the standing order of this Court, Brown was also entitled to suspension of the one-year deadline from September 1, 2005 through November 25, 2005.

---

(2) The failure to file the motion authorized in Paragraph (1) of this Subsection shall not preclude a party from using the basis of the motion as a defense to an exception of prescription.

[10] The suspension granted under La. Rev. Stat. Ann. § 9:5824 is appropriate under the circumstances of this case. In his opposition to the motion to dismiss, Brown alleges that he was moved from prison to prison over the course of the months following Hurricane Katrina. He claims to have spent an extended period of time in a facility in Florida, at which he was required to work long hours to complete the construction of the facility. He also reports that he was without access to a law library to aid in his filing of this complaint.

[11] *See* E.D. La. Order, signed September 1, 2005, attached hereto.

[12] *See* E.D. La. Order, signed November 3, 2005, attached hereto.

### B.     Brown's Complaint was Timely Filed

The record in this case reflects that Brown's complaint was filed by the Clerk of Court on November 6, 2006, when pauper status was granted. In the *pro se* prisoner context, however, the date when prison officials receive the complaint for delivery to the court is considered the time of filing for limitations purposes. *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995); *see also Thompson v. Raspberry*, 993 F.2d 513, 515 (5th Cir. 1993) (pro se prisoner's objection to a report and recommendation deemed filed when given to prison officials for mailing). In this case, Brown signed the complaint on October 2, 2006, which is the earliest date on which he could have delivered it to prison officials for mailing.

As noted above, Brown's claims brought in this § 1983 action accrued on August 29, 2005.[13] Brown had one-year from that date, or until August 29, 2006, to file his suit in accordance with La. Civ. Code art. 3492 as applicable to § 1983 *et seq*.

Considering, however, the suspension of deadlines imposed by the State of Louisiana, Brown's one-year filing period was suspended from August 29, 2005 through June 1, 2006. Thus, no time passed towards the deadline prior to the suspension. Brown therefore effectively had one year from the termination of the suspension, or until June 1, 2007, to timely file his § 1983 action.[14] Brown's complaint is deemed filed on October 2, 2006. His § 1983 complaint was therefore timely filed in this Court.

Even considering only the suspension of deadlines imposed by Chief Judge Berrigan to actions specifically brought in this Court, the conclusion would not change. As stated above,

---

[13]The Court again notes that Brown's claims arising out of his time at Hunt accrued several days later.

[14]Using only the Executive Orders for the suspensive period, the one year filing period would have been from November 26, 2005 to November 25, 2006. Brown's complaint was still filed within that time period.

Brown's claims accrued on August 29, 2005. The one-year filing period would have run from August 30, 2005 for two days, until September 1, 2005, when Chief Judge Berrigan ordered the suspension of deadlines. The suspension of deadlines continued through November 25, 2005. Brown's prescriptive period began to run again on November 26, 2005. Brown had an additional 363 days, or until November 23, 2006, to file his suit. His petition is deemed filed on October 2, 2006. The petition was therefore filed within the one-year period as affected by this suspension period.

## IV.   Recommendation

It is therefore **RECOMMENDED** that the **"City Motion for Dismissal Under Rule 12(b)(6)" (Rec. Doc. No. 7)** filed by the defendants, the City of New Orleans and Mayor C. Ray Nagin, be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this ___31st___ day of _____July_____, 2007

_____
KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

11



# State of Louisiana
## EXECUTIVE DEPARTMENT

### EXECUTIVE ORDER NO. KBB 2005 - 32

#### *EMERGENCY SUSPENSION OF PRESCRIPTION, PEREMPTION AND OTHER LEGAL DEADLINES*

| | |
|---|---|
| **WHEREAS,** | the Louisiana Homeland Security and Emergency Assistance and Disaster Act, R.S. 29:721, *et seq.*, confers upon the governor of the state of Louisiana emergency powers to deal with emergencies and disasters, including those caused by fire, flood, earthquake or other nature or man-made causes; |
| **WHEREAS,** | Hurricane Katrina struck the state of Louisiana causing severe flooding and damage to the southeastern part of the state, which has threatened the safety and security of the citizens in the affected areas, along with the private property and public facilities; |
| **WHEREAS,** | pursuant to Proclamation No. 48 KBB 2005, a state of emergency was declared for the entire state and is currently in effect; |
| **WHEREAS,** | as a direct consequence of the disaster and evacuation, attorneys throughout the state have clients whom they cannot contact due to the clients' evacuation outside of their home parishes and in many cases, outside the state of Louisiana; |
| **WHEREAS,** | similarly, there are clients who can not contact their counsel due to counsel's evacuation as well as the extreme challenges to communication networks resulting from the hurricane and subsequent flooding; |
| **WHEREAS,** | in addition, attorneys from areas affected by Hurricane Katrina have clients and cases in parishes not directly affected by this extreme disaster, but because the attorney's office is either destroyed or not accessible, the attorney is not reasonably able to timely file claims or responses on behalf of their clients; |
| **WHEREAS,** | La. Constitution Art. I, Section 22 provides that all courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights; |
| **WHEREAS,** | Hurricane Katrina has also rendered several of the court houses temporarily inoperable and/or not fit for occupancy; |
| **WHEREAS,** | the destruction and disruption of services and infrastructure to our system of justice caused by Hurricane Katrina will have a profound impact on the basic rights to an untold number of persons unless action is taken to suspend the effects of the tolling of legal delays during the period of this emergency; and |
| **WHEREAS,** | the Louisiana State Bar Association, the Louisiana Trial Lawyers Association, and the Louisiana Association of Defense Counsel jointly requested the governor to suspend all deadlines applicable to legal proceedings, including prescription and peremption, in all Louisiana state courts, administrative agencies and boards; |

**NOW THEREFORE I, KATHLEEN BABINEAUX BLANCO,** Governor of the state of Louisiana, by virtue of the authority vested by the Constitution and laws of the state of Louisiana, do hereby order and direct as follows:

**SECTION 1:** All deadlines in legal proceedings, including liberative prescriptive and peremptive periods in all courts, administrative agencies, and boards are hereby suspended until at least September 25, 2005, including, but not limited to, any such deadlines set for in the following:

  A.  Louisiana Civil Code;

  B.  Louisiana Code of Civil Procedure;

  C.  La. R.S. Title 9, Civil Code Ancillaries;

  D.  La. R.S. Title 13, Courts and Judicial Procedure;

  E.  La. R.S. Title 23, Chapter 10, Worker's Compensation;

  F.  La. R.S. Title 40, Chapter 5 Part XXI-A, Malpractice Liability for State Services; and

  G.  La. R.S. Title 40, Chapter 5, Part XXIII, Medical Malpractice.

**SECTION 2:** This Order is effective upon signature and shall apply retroactively from Monday, August 29, 2005, through Sunday, September 25, 2005, unless amended, modified, terminated, or rescinded by the governor, or terminated by operation of law prior to such time.



**IN WITNESS WHEREOF,** I have set my hand officially and caused to be affixed the Great Seal of Louisiana, at the Capitol, in the city of Baton Rouge, on this 6th day of September, 2005.

**/S/ Kathleen Babineaux Blanco**
**GOVERNOR OF LOUISIANA**

**ATTEST BY**
**THE GOVERNOR**

**/S/ Al Ater**
**SECRETARY OF STATE**

# State of  Louisiana

## EXECUTIVE DEPARTMENT

### EXECUTIVE ORDER NO. KBB 2005 - 48

*EXTENSION OF EXECUTIVE ORDER NO. KBB 2005 - 32*
*EMERGENCY SUSPENSION OF PRESCRIPTION, PEREMPTION AND OTHER LEGAL DEADLINES*

**WHEREAS,** Executive Order No. KBB 2005-32, issued on September 6, 2005, suspended all deadlines applicable to legal proceedings, including prescription and peremption, in all Louisiana state courts, administrative agencies and boards;

**WHEREAS,** Executive Order No. KBB 2005-32 is in effect until September 25, 2005; and

**WHEREAS,** the Louisiana State Bar Association, the Louisiana Trial Lawyers Association, and the Louisiana Association of Defense Counsel jointly requested that Executive Order No. 2005 - 32 be extended for an additional thirty (30) days;

**NOW THEREFORE I, KATHLEEN BABINEAUX BLANCO,** Governor of the state of Louisiana, by virtue of the authority vested by the Constitution and laws of the state of Louisiana, do hereby order and direct as follows:

**SECTION 1:** Section 1 of Executive Order No. KBB 2005-32, issued on September 6, 2005, is amended as follows:

  A. All deadlines in legal proceedings, including liberative prescriptive and peremptive periods in all courts, administrative agencies, and boards are hereby suspended until at least October 25, 2005, including, but not limited to, non-constitutionally mandated deadlines in criminal proceedings and any such deadlines set for in the following:

  1. Louisiana Civil Code;

  2. Louisiana Code of Civil Procedure;

  3. R.S. Title 9, Civil Code Ancillaries;

  4. La. R.S. Title 13, Courts and Judicial Procedure;

  5. La. R.S. Title 23, Chapter 10, Workers Compensation;

  6. La. R.S. Title 40, Chapter 5 Part XXI-A, Malpractice Liability for State Services; and

  7. La. R.S. Title 40, Chapter 5, Part XXIII, Medical Malpractice.

  B. The suspension of laws as provided in Subsection 1(A) of this Executive Order shall apply statewide and in all matters, except to the extent that the suspension of deadlines in legal proceedings may hereafter be shortened or lifted, in whole or in part, by an order issued by the Louisiana Supreme Court acting in accordance with the power vested pursuant to Article V of the Constitution.

**SECTION 2:** This Order is effective upon signature and shall remain in effect until Tuesday,

October 25, 2005, unless amended, modified, terminated, or rescinded by the governor, or terminated by operation of law prior to such time.



**IN WITNESS WHEREOF,** I have set my hand officially and caused to be affixed the Great Seal of Louisiana, at the Capitol, in the city of Baton Rouge, on this 23rd day of September, 2005.

/S/ Kathleen Babineaux Blanco
**GOVERNOR OF LOUISIANA**

**ATTEST BY
THE GOVERNOR**

/S/ Al Ater
**SECRETARY OF STATE**



# State of Louisiana
## EXECUTIVE DEPARTMENT

### EXECUTIVE ORDER NO. KBB 2005 - 67

*EMERGENCY SUSPENSION OF PRESCRIPTION, PEREMPTION AND OTHER LEGAL DEADLINES*

**WHEREAS,** the Louisiana Homeland Security and Emergency Assistance and Disaster Act, R.S. 29:721, *et seq.*, confers upon the governor of the state of Louisiana emergency powers to deal with emergencies and disasters, including those caused by fire, flood, earthquake or other nature or man-made causes;

**WHEREAS,** Hurricane Katrina and its aftermath, and Hurricane Rita struck the state of Louisiana causing severe damage and flooding to the southern part of the state, which has threatened the safety, health, and security of the citizens of the state of Louisiana, along with private property and public facilities;

**WHEREAS,** pursuant to the Louisiana Homeland Security and Emergency Assistance and Disaster Act, R.S. 29:721, *et seq.*, a state of emergency/disaster was declared through Proclamation No. 48 KBB 2005, as amended by Proclamation No. 54 KBB 2005, and Proclamation No. 53 KBB 2005, as amended by Proclamation No. 60 KBB 2005;

**WHEREAS,** as a direct consequence of these disasters and evacuations, attorneys throughout the state had clients whom they could not contact due to the client's evacuation and similarly, there were clients who could not contact their counsel due to counsel's evacuation;

**WHEREAS,** in addition to challenges resulting from displacement and access to office and personal files and records, the storms and their aftermaths resulted in extreme challenges to communication networks and disruption of mail service;

**WHEREAS,** Hurricanes Katrina and Rita also rendered several court houses temporarily inoperable and/or not fit for occupancy;

**WHEREAS,** La. Constitution Art. I, Section 22 provides that all courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights;

**WHEREAS,** the destruction and disruption of services and infrastructure to our system of justice caused by Hurricanes Katrina and Rita would have had a profound impact on the basic rights to an untold number of persons unless action was taken to suspend the effects of the tolling of legal delays during the period of these emergencies;

**WHEREAS,** based on the above, on September 6, 2005, Executive Order No. KBB 2005-32, suspending deadlines in legal proceedings, was issued at the request of the Louisiana State Bar Association, the Louisiana Trial Lawyers Association, and the Louisiana Association of Defense Counsel, and in the interest of fairness and justice for all parties;

**WHEREAS,** on September 23, 2005, Executive Order No. KBB 2005-32, was amended to extend the suspension for an additional thirty days and to recognize the

|  | Louisiana Supreme Court's authority to lift the suspension, in whole or in part, by Order; |
|---|---|
| **WHEREAS,** | on October 3, 2005, the Louisiana Supreme Court issued a Resolution and Temporary Rule that provided a procedure to have a judge consider allowing legal proceedings to proceed where justice and equity mandate the shortening or lifting of the suspension; |
| **WHEREAS,** | it has been announced that the Louisiana Legislature will be called into a special session from November 6, 2005, to November 18, 2005, which will be the first opportunity for legislative action on these issues; |
| **WHEREAS,** | as the immediacy of the emergency passes and as the state begins to move toward a recovery and rebuilding phase, it is necessary to provide notice and begin the process of returning legal affairs to their normal processes as soon as practical in an effort to restore commerce; and |
| **WHEREAS,** | the attorney general will issue, to judges and Justice of the Peace Courts in the affected areas, recommended eviction guidelines according to current law but taking into consideration the emergency circumstances that occurred over the last several weeks, so that as these proceedings begin in the parishes affected by Hurricane Katrina, the authorities have legal guidance as to the rights and privileges of both the lessees and lessors; |

**NOW THEREFORE I, KATHLEEN BABINEAUX BLANCO,** Governor of the state of Louisiana, by virtue of the authority vested by the Constitution and laws of the state of Louisiana, do hereby order and direct as follows:

**SECTION 1:** Section 1 of Executive Order No. KBB 2005-32, issued on September 6, 2005 as amended by Executive Order No. KBB 2005-48, issued on September 23, 2005, is hereby amended as follows:

  A. Liberative prescriptive and peremptive periods are hereby suspended statewide until at least Friday, November 25, 2005.

  B. Except as provided in Subsection A of this Section, the suspension of deadlines in legal proceedings, as provided in Executive Order No. KBB 2005-32, as amended by Executive Order No. KBB 2005-48, in all courts, administrative agencies, and boards unaffected by Hurricane Rita, as defined as those parishes not identified in Subsection C of Section 1 of this Order, shall end as of Tuesday, October 25, 2005.

  C. Deadlines in legal proceedings in courts, administrative agencies, and boards affected by Hurricane Rita, defined as the parishes of Calcasieu, Cameron, Jefferson Davis, and Vermilion are hereby suspended until at least Friday, November 25, 2005, including but not limited to, non-constitutionally mandated deadlines in criminal proceeding and any such deadlines as follows:

  1. Louisiana Civil Code;

  2. Louisiana Code of Civil Procedure;

  3. La. R.S. Title 9, Civil Code Ancillaries;

  4. La. R.S. Title 13, Courts and Judicial Procedure;

  5. La. R.S. Title 23, Chapter 10, Workers' Compensation;

  6. La. R.S. Title 40, Chapter 5 Part XXI-A, Malpractice Liability for State Services; and

  7. La. R.S. Title 40, Chapter 5, Part XXIII, Medical Malpractice.

> D. Paragraph C of this Section shall not be interpreted so as to prohibit the parties from proceeding in accordance with the Louisiana Supreme Court's Resolution and Temporary Rules issued on October 3, 2005, as amended, including but not limited to, landlord-tenant disputes, evictions proceedings, and lease disputes regarding immovable property, provided such proceedings are carried out in the manner provided for by the Louisiana Supreme Court Resolution and Temporary Rule, as amended.
>
> E. Nothing in Subsection C of this Section shall prohibit an owner of immovable property from reclaiming leased property if abandoned as provided for by law, or entering leased property to make necessary repairs as provided for by law.

**SECTION 2:** This Order is effective upon signature and shall remain in effect until Friday, November 25, 2005, unless amended, modified, terminated, or rescinded by the governor, or terminated by operation of law prior to such time.



IN WITNESS WHEREOF, I have set my hand officially and caused to be affixed the Great Seal of Louisiana, at the Capitol, in the city of Baton Rouge, on this 19th day of October, 2005.

/S/ Kathleen Babineaux Blanco
**GOVERNOR OF LOUISIANA**

**ATTEST BY**
**THE GOVERNOR**

/S/ Al Ater
**SECRETARY OF STATE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

O R D E R

Due to Hurricane Katrina and its aftermath, and the direct consequences of evacuation, the disruption of services and communication in the region, and the Courthouse in New Orleans, as well as numerous attorneys' offices, being temporarily inaccessible,

IT IS HEREBY ORDERED that all deadlines and delays, including liberative prescriptive and peremptive periods in cases pending or to be filed in this Court, are hereby suspended until ordered otherwise.

New Orleans, Louisiana, this 1st day of September, 2005.

HELEN G. BERRIGAN, CHIEF JUDGE
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ORDER

As the United States Court House in New Orleans has reopened on November 1, numerous attorneys' offices have reopened in New Orleans or are otherwise operating in alternate locations, and with improving services and communication in the region,

IT IS HEREBY ORDERED that the suspension of deadlines and delays, including liberative prescriptive and peremptive periods in all civil cases pending or to be filed in this Court, **is terminated effective November 25, 2005**, except for good cause shown as determined by the presiding judge.

New Orleans, Louisiana, this **3rd** day of November, 2005.

HELEN G. BERRIGAN, CHIEF JUDGE
U.S. DISTRICT COURT