## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TERRELL BROWN**                                      **CIVIL ACTION**

**VERSUS**                                             **NO.   06-9125**

**CITY OF NEW ORLEANS, CRIMINAL**                      **SECTION "N"(4)**
**SHERIFF'S OFFICE OF NEW ORLEANS,**
**LA. DEPT. OF CORRECTIONS**

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and (2)**.  On March 8, 2007, the undersigned Magistrate Judge conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for the defendants.[2]  Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

---

[1] 766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims.  *Spears*, 766 F.2d at 180.  The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  *Wilson v. Barrientos*, 926 F.2d 480, 481 (5th Cir. 1991).

[2] Rec. Doc. No. 11.  The plaintiff was sworn prior to testifying.  The cassette tape of the hearing is in the custody of the Court Recording Unit.

## I.     Factual Summary

### A.     The Complaint

The plaintiff, Terrell Brown ("Brown"), was incarcerated in the Morehouse Parish Jail in Bastrop, Louisiana, at the time of the filing of this *pro se* and *in forma pauperis* complaint.  Brown filed this civil rights suit pursuant to Title 42 U.S.C. § 1983 against the City of New Orleans, the Orleans Parish Criminal Sheriff's Office, the Louisiana Department of Corrections ("DOC"), New Orleans Mayor C. Ray Nagin, Orleans Parish Criminal Sheriff Marlin Gusman, and DOC Secretary Richard Stalder, seeking monetary damages for the alleged untimely evacuation and unsafe conditions of his confinement at the time of Hurricane Katrina.

Brown alleges that he was left for dead in the Orleans Parish prison system ("OPP"), without food or water, for three days after Hurricane Katrina struck the New Orleans area.  He also alleges that he was thereafter moved to a football field at the Elayn Hunt Correctional Center ("Hunt") in St. Gabriel, Louisiana.  He claims that he remained there for about three nights, sleeping in the rain, grass, mud, and water without shelter.  He also complains that news helicopters flew overhead for several days.

Brown also alleges that the DOC officers sat in chairs outside of the gates and watched inmates fight over bag lunches thrown to them over the fences.  He further claims that, one week later, he was treated for a bad skin infection.  As a result of these conditions, he seeks $50,000 in compensatory damages and punitive damages allowed by law.

### B.     The *Spears* Hearing

Brown testified that he was a DOC inmate housed in trustee dorm on the second floor of the House of Detention ("HOD") within the OPP at the time of, and for six months prior to, Hurricane

2

Katrina.  Brown alleges that he slept in the jail for three nights after the storm.  He had no clean

water and no food.  He also claims that the water rose outside just to the steps, which was below the

second floor, and there was no water on his tier.

On the Thursday after the storm, he was taken to a roof area on the second or third floor.  He

walked through ankle-deep water to boats.  He stated that he was taken by boat to the Broad Street

bridge area.  He further stated that he then walked through a small amount of  water to a dry area

under the bridge near Interstate 10.  He waited there for two or three hours with no food or water.

Brown further testified that he was put on a bus and taken to the football field at Hunt.  He

was given a blanket and slept there for three nights.  He recalled that, at one point, the guards raised

themselves up on a forklift and threw sandwiches to the inmates over the fence.  He stated that he

received three sandwiches during the time he remained on the field.

Brown stated that, one day, the guards ran water hoses to the field.  The inmates were given

soap and told to take there clothes off for a shower.  He was then moved into Fox 7 Dormitory.

He claims that several days later, he was taken by bus to the airport and flown to the

Coleman, Florida Federal Penitentiary II.  Brown states that the facility was new and not yet opened.

After he was there several days, he noticed a rash on his legs.  He was treated for a skin infection

and staph infection.  He also claims he had skin burns across his forehead and on his lips.  He

underwent minor surgery on his leg and was given antibiotics and other medication for several

weeks.  Brown also claims that he is unsure what caused the rash but he attributes it to sleeping on

the football field at Hunt, with ants and grassy water.

Brown testified that he sued Mayor Nagin because he heard that the Mayor appeared on

CNN and took full responsibility for not evacuating everyone.  He also named Sheriff Gusman as

a defendant because he was left unattended at HOD by his deputies with no water or food.  He also claimed that he named Stalder and the other defendants because they were responsible for him.  He seeks money damages as a result of his experience.

      **B.**    **Pending Motions**

Sheriff Gusman filed a Motion for Judgment on the Pleadings Pursuant to Rule 12(c) (Rec. Doc. No. 31) which has been noticed for hearing before the undersigned Magistrate Judge on May 7, 2008.  Sheriff Gusman argues that the plaintiff has failed to establish any personal involvement or deliberate indifference on his part with regard to the conditions of his confinement during and after Hurricane Katrina or during the evacuation from OPP.

Although Brown has not yet responded to Gusman's motion, he previously filed two Motions for Appointment of Counsel (Rec. Doc. Nos. 24, 28) which are also pending before the Court.  The Court is herein conducting its statutory review for frivolousness which will render moot all of these motions.

**II.**    **Standards of Review for Frivolousness**

Title 28 U.S.C. §§ 1915(e)(2), 1915A and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss complaints filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous.  The Court has broad discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce,* 2 F.3d 114 (5th Cir. 1993).  However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under these statutes, a claim is frivolous only when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir.

1998).  A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.  *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999).  It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations.  *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations.  *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus,* 976 F.2d 268, 269 (5th Cir. 1992).

**III.    Analysis**

 **A.    Sheriff Gusman**

Brown complains that the evacuation process during Hurricane Katrina was not timely and was negligently performed.  As a result, he claims that he was left in the hot prison without food or drinking water for several days.  He claims that the manner and timing of the evacuation was cruel and unusual punishment and constituted negligence, which caused him to suffer mental anguish and emotional distress.

The Eighth Amendment's prohibition on "cruel and unusual punishments" forbids conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' . . . or which 'involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (citations omitted).  "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.  To the extent

that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on the claim for damages under §1983. However, a supervisory official, like Sheriff Gusman, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). Moreover, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980). In addition, an official is deliberately indifferent to an inmate's safety in violation of the Eighth Amendment "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

In this case, the plaintiff has not set forth any personal involvement or intentional indifference by Sheriff Gusman in the conditions of any aspect of his detention and evacuation during or after Hurricane Katrina. Brown's allegations also confirm that he was successfully removed from OPP after the Hurricane, albeit under harsh circumstances.

It is not enough for recovery under § 1983 for Gusman to have been in a supervisory role at the time. Instead, supervisory liability may exist "without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a

repudiation of constitutional rights and is the moving force of the constitutional violation."

*Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir.1987).  An official policy is:

1.   a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [government entity] ... or by an official to whom the [entity] ha[s] delegated policy-making authority; or

2.   A persistent, widespread practice of ... officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [the entity's] policy.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992).  A plaintiff may also establish a custom or policy based on an isolated decision made in the context of a particular situation if the decision was made by an authorized policymaker in whom final authority rested regarding the action ordered.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).

Brown does not allege that there was a policy established by Sheriff Gusman which deprived him of a constitutional right during the unprecedented circumstances which form the basis of his complaint.  Therefore, without a showing of some personal and intentional action or policy by Sheriff Gusman, Brown's claims are frivolous and otherwise fail to state a claim for which relief can be granted.

**B.**   **Orleans Parish Criminal Sheriff's Office**

Brown has named the Orleans Parish Criminal Sheriff's Office as a defendant in this case. He has not alleged a basis for having done so.  Nevertheless, his claims, if any, against this defendant must be dismissed.

In accordance with Rule 17(b) of the Federal Rules of Civil Procedure, Louisiana law governs whether the Orleans Parish Criminal Sheriff's Office can be sued.[3]  Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person."  This term is defined by the Louisiana Civil Code as ". . . an entity to which the law attributes personality, such as a corporation or partnership."  La. Civ. Code art. 24.

The State of Louisiana grants no such legal status to any Parish Sheriff's Office.  *Liberty Mut. Ins. Co. v. Grant Parish Sheriff's Dept.*, 350 So.2d 236 (La. App. 3d Cir.), *writ refused*, 352 So.2d 235 (La. 1977).  Thus,  the Parish Sheriff's Offices are not legal entities capable of suing or being sued.  *Ruggiero v. Litchfield*, 700 F. Supp. 863, 865 (M.D. La. 1988).  Accordingly, the Orleans Parish Criminal Sheriff's Office is not a juridical person capable of being sued under § 1983.  The claims if any against this entity are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to Title 28 U.S.C. § 1915(e) and § 1915A and Title 42 U.S.C. § 1997e.

### C.    Mayor Nagin and the City of New Orleans

Brown also has named Mayor Nagin as a defendant because he was mayor of New Orleans at the time Hurricane Katrina hit.  He also claims that he heard that Mayor Nagin appeared on television and took responsibility for the devastation.

Under § 1983, the plaintiff must not only prove that a constitutional violation occurred, but also that the defendant's actions were taken under color of state law.  *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).  As discussed above, a defendant may be liable under § 1983 only if he was personally involved in the acts causing the deprivation of the plaintiff's constitutional rights or a causal connection existed between an act by that defendant and the alleged constitutional violation.

---

[3]Rule 17(b) of the Federal Rules of Civil Procedure provides that "capacity to sue or be sued shall be determined by the law of the state in which the district court is held."  *See* Fed. R. Civ. P. 17(b).

*Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998) (citing *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976)); *Douthit*, 641 F.2d at 346; *Watson*, 611 F.2d at 123.

In this case, Brown has failed to allege any action or inaction by Mayor Nagin with regard to his confinement in OPP during or after Hurricane Katrina or his evacuation from the facility. Brown does not allege that the Mayor did anything to personally and intentionally violate his constitutional rights.

Furthermore, under Louisiana law, the Mayor, as administrator of the City of New Orleans, has no responsibility for the management of affairs at OPP.  Under Louisiana law, the duty to administer and operate the parish jails falls on the Sheriff of each parish.  La. Rev. Stat. Ann. § 15:704.  The law further provides that the administration of a parish jail, like OPP, including the obligation to care for, feed and clothe the prisoners, is within the province of the Parish Sheriff, not the City where the jail is located.  La. Rev. Stat. Ann. § 15:704 and § 33:1435(A); *see also Watson v. Graves*, 909 F.2d 1549, 1551 (5th Cir. 1990); *Thompkins*, 828 F.2d at 304 n.8; *see also*, *Langley v. City of Monroe*, 582 So.2d 367, 368 (La. App. 2nd Cir. 1991).

Furthermore, to the extent Mayor Nagin is named in his official capacity, the claims must also be dismissed.  Suit against the Mayor in his official capacity is suit against the City of New Orleans, which was also named as a defendant in this case.  *Monell v. Dept. of Social Services*, 436 U.S. 658, 690 n. 55 (1978); *see also Kentucky v. Graham*, 473 U.S. 473 U.S. 159, 165 (1985). Therefore, the Mayor, as a representative of the City of New Orleans, could be liable under § 1983 only if his actions were in execution of an unconstitutional City policy or custom which inflicted injury or damage upon the plaintiff.  *Monell*, 436 U.S. at 694.

Brown, therefore, must allege not merely that such an unconstitutional policy or custom existed, but that it was the proximate cause of his injury or damage.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 122-24 (1992); *Berry v. McLemore*, 670 F.2d 30, 33-34 (5th Cir. 1982), *overruled on other grounds, Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986).  Brown has not alleged that the alleged constitutional violations were the result of anything other than the actions or inactions of the unidentified personnel at OPP and later, by other personnel at Hunt.  Brown has, therefore, failed to allege that an unconstitutional policy or custom of the City of New Orleans, or Mayor Nagin in his official capacity, led to his injuries as contemplated by *Monell*.

Thus, neither the Mayor nor the City of New Orleans has a causal link to the conditions of Brown's confinement during and after Hurricane Katrina, nor responsibility for the administration of the Orleans Parish Prison system.  Therefore, claims against the Mayor and the City of New Orleans should be dismissed as frivolous and otherwise for failure to state a claim for which relief may be granted pursuant to Title 28 U.S.C. § 1915(e) and § 1915A and Title 42 U.S.C. § 1997e.

### D.    The State of Louisiana and Secretary Stalder

Brown also names Secretary Richard Stalder and the State of Louisiana, through the Louisiana Department of Corrections ("DOC"), as defendants in this case.  He does not set forth any allegations against Stalder other than in his role as Secretary of the DOC.  He apparently names the State of Louisiana, through the DOC, as a defendant because he was housed in a DOC facility after he was evacuated from OPP.

As discussed above, under § 1983, the plaintiff must prove that a constitutional violation occurred and that the defendant's actions were taken under color of state law and he was personally

involved in the unconstitutional act. *Flagg Bros., Inc.*, 436 U.S. at 156; *Smith*, 158 F.3d at 911 (citing *Sims*, 537 F.2d at 831); *Douthit*, 641 F.2d at 346; *Watson*, 611 F.2d at 123.  In this case, Brown has not alleged a constitutional violation by Stalder or that he was responsible for the conditions of his confinement or the evacuation from OPP.  Without any factual basis for his claim, his claims against Stalder must be dismissed as frivolous or for failure to state a claim for which relief can be granted.

Furthermore, Stalder, as a state actor in his official capacity, is not a person for purposes of suit under § 1983.  *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989).  When an official is named in an official capacity, the action is considered to be one taken against the agency he represents.  *Monell*, 436 U.S. at 690 n.55; *Hafer v. Melo,* 502 U.S. 21, 25 (1991).  Stalder represents the DOC, which is a department within the Louisiana state government.  La. Rev. Stat. Ann. § 36:401.  For Eleventh Amendment purposes, the DOC is considered an arm of the state since any judgment against it or its subdivisions necessarily would be paid from state funds.  *Anderson v. Phelps*, 655 F. Supp. 560, 564 (M.D. La. 1985).  Therefore, suit against Stalder in his official capacity, and suit against the State of Louisiana through the DOC, is prohibited by the Eleventh Amendment.  *Muhammad v. Louisiana*, 2000 WL 1568210 (E.D. La. Oct. 18, 2000); *Citrano v. Allen Correctional Center*, 891 F. Supp. 312, 320 (W.D. La. 1995) ("A suit against any state correctional center would be suit against the state and therefore barred by the Eleventh Amendment.") (citing *Anderson*, 655 F. Supp. at 560, and *Building Engr. Serv. Co., Inc. v. Louisiana*, 459 F. Supp. 180 (E.D. La. 1978)).

The Eleventh Amendment forbids federal courts from entertaining a suit for monetary damages brought by a citizen against his own State.  *Pennhurst State School v. Halderman*, 465 U.S.

89, 98 (1984); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185-86 (5th Cir. 1986). A state may expressly waive this Eleventh Amendment sovereign immunity. *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (holding that a state's consent to suit against it in federal court must be expressed "unequivocally"); *Welch v. State Dept. of Highways and Public Transp.*, 780 F.2d 1268, 1271-73 (5th Cir. 1986). However, neither the State nor the DOC have expressly waived immunity in this case. In addition, La. Rev. Stat. Ann. § 13:5106(a) provides that "no suit against the state . . . shall be instituted in any court other than a Louisiana state court."

Accordingly, the Court is without jurisdiction to hear Brown's claims against Stalder, in his official capacity, and those against the State of Louisiana through the DOC. Because the Eleventh Amendment deprives this Court of jurisdiction over these defendants, the claims against them should be dismissed without prejudice as frivolous, for failure to state a claim for which relief can be granted, and for seeking relief against an immune defendant, pursuant to Title 28 U.S.C. § 1915(e) and § 1915A and Title 42 U.S.C. § 1997e. *See Warnock v. Pecos County, Texas,* 88 F.3d 341, 343 (5th Cir. 1996).

### E.   State Law Negligence Claims

Brown, under a broad reading, suggests that Gusman and the other defendants breached their responsibilities when they left him in the prison and exposed him to poor conditions. These claims may be considered under a state law theory of negligence. *See* La. Civ. Code art. 2315 *et seq.*

The "general rule" in the Fifth Circuit "is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial." *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (citation omitted); *accord Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all

federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims").

The court is recommending dismissal of Brown's federal claims in their entirety either as frivolous or failure to state a claim for which relief can be granted.  Therefore, his state law claims should be dismissed without prejudice to his ability to assert them in the appropriate state forum as the Court declines to exercise its supplemental jurisdiction.

**V.**      **Recommendation**

It is therefore **RECOMMENDED** that Brown's § 1983 claims against the defendants, Sheriff Marlin Gusman, Mayor Ray Nagin, the City of New Orleans, the Orleans Parish Criminal Sheriff's Office, and Secretary Richard Stalder, in his individual capacity, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to Title 28 U.S.C. § 1915(e) and § 1915A and Title 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that Brown's § 1983 claims against Secretary Stalder, in his official capacity, and the State of Louisiana through the Louisiana Department of Corrections, be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction and otherwise as frivolous, for failure to state a claim for which relief can be granted, and for seeking relief against an immune defendant, pursuant to Title 28 U.S.C. § 1915e and § 1915A and Title 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that Brown's state law claims against the defendants be **DISMISSED WITHOUT PREJUDICE** to his ability to pursue the claims in the appropriate state forum because the Court declines to exercise its supplemental jurisdiction.

It is further **RECOMMENDED** that Sheriff Gusman's **Motion for Judgment on the Pleadings Pursuant to Rule 12(c) (Rec. Doc. No. 31)** and Brown's **Motions for Appointment of Counsel (Rec. Doc. Nos. 24, 28)** be **DENIED** as moot.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 14th day of April, 2008.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

14